The next matter, number 24-1815 and number 24-1816, Hospital Amerimed Cancun and Hospital Caruca del Sur v. Martin's Point Health Care, Incorporated. At this time, would counsel for the hospitals please introduce themselves on the record. Good morning. I may have pleased the court. My name is Mark Darling and I represent the Mexican or foreign hospitals as I refer to them at various points. I'd like to reserve two minutes of my time for rebuttal if I may. You may have two minutes. Thank you. Neither a borrower nor a lender be. Well, we all know that one, right? Hamlet Act 1 Scene 3. Neither a contracted nor a non-contracted provider be when it comes to Medicare. And I think that is the essential mix-up that the appellee in this case, the insurer, is trying to get the court to buy into here and got the lower court judge to buy into. And to be fair to the lower court judge, the road map in this case has been set by the Fifth Circuit and was set about a month before he issued his decision in the Karas case. And it was a month after the parties had already made the submissions. So he was kind of left in that lurch. And so his order, though, I think is the key for you to start looking at this case. And his order says that while I engaged in lawyerly rhetoric, I guess I would take that as a compliment, I didn't have a case to support my position. Well, I think the Rencare case did support my position. But if it didn't all the way, then certainly the Karas case does. And I'll ask you a fundamental sort of baseline question. Do you agree or disagree with this statement, Medicare benefits are not owed to the hospitals? The only basis of your claim is that they misrepresented that they were. Do you agree that no Medicare benefits are at issue in this case? Because the treatment was rendered in a foreign land, Medicare is not owed. Put that aside. Put aside the foreign part for a second. What is your claim? My claim, there are two state law torts. And they're based upon a diversity jurisdiction for the court subject matter jurisdiction. That, well, one tort and one equitable remedy. The equitable remedy is promissory estoppel. And the tort is negligence. And so the promissory estoppel is what? The promissory estoppel is that when these United States citizens came into a hospital in Mexico for treatment of very serious and emergency conditions, the hospital contacted Martin's Point, once they learned who the insurer was, and asked for preauthorizations. And many of these calls are recorded. And there's documentation of them obtaining preauthorizations. And you now know all the circumstances, I assume. And what they told, what ended up playing out is it was a $25,000 cap, right? Well, the allegation in the case was that they were given authorization to do work, and the cap was never, ever discussed. Right. Or provide that information was not provided.  And that's a misrepresentation. And so that's the essence of the claim. Yes. There's a misrepresentation under which you detrimentally relied, you spent a lot of money, and now you can't recover it. And the reason you can't recover it, I take it, is there's a $25,000 Medicare Part C cap in the supplemental benefits that applies. Do you agree with that? Well, that is what they say applies in terms of this. You say something else applies. Well, yes. We say that the cap doesn't apply because it's treatment that was rendered in a foreign country. If you look at the basic definition language, which is in our brief, for Medicare to apply. Okay. So that's a legal question. So the way you've just presented it then, there's a legal question embedded in this case legally about whether Medicare has to pay for foreign-provided services. Your Honor, I think the distinction here is when Medicare's involvement is a situation where the enrollee is the one who's basically having the problem. That's not been the allegation in this case. If you look at CARES and Rencare, both Fifth Circuit cases, they both say that the dispute is not involving the enrollee. The dispute in CARES was an attempt to recoup over payments that occurred over many years. So the enrollee's not involved. In our situation, the enrollee is not involved. What is happening is we're asking a private insurer to say, hey, this is what we're planning on doing in terms of medical care in Mexico. Is this authorized? Answer, yes, it's authorized. So we don't have a contract with the Mexican hospitals. I acknowledge that. But that's why the case was brought as one for an equitable remedy and for tortious conduct. Let me see if I can understand this.  Suppose your client, instead of calling Martin's Point, had called a lawyer in Washington who was a specialist in Medicare and had asked the lawyer, is there coverage for this? And the lawyer said, yes. And it turned out there wasn't any coverage for it. Medicare didn't cover it at all. You would have a breach of contract or tort action against that lawyer for negligent advice. In your hypothetical, I suppose you would. Yes. Is this case, in your view, any different than that? Instead of calling the lawyer, you called Martin's Point. They told you it's covered, you allege. And I now take it, does everybody agree there was no coverage? So you were now suing them like you would sue that lawyer. I think maybe that's an apt analogy, Your Honor. Well, why might it not be? Well, because the difference – I'm sorry, go ahead. Go ahead. Is there any dispute in this case about whether Medicare applied? Yes. We say that – Well, then why aren't you going to Medicare? Well, not in the sense of that Medicare applies to say you have to go through a process with Medicare. Is there any dispute in this case about whether Medicare coverage applies as opposed to you should be covered? You were told they were covered. The insurer asserts that we have to go through an administrative process through Medicare before they are required to pay. And when I read the law, what that says is if the case arises under Medicare, then you do need to do that. And that makes a lot of sense because these regulations are complicated. And we want it to be sorted out first in the administrative realm. I think what my questions and Judge Kayada's questions we're getting at is, is this a case that has a Medicare interpretation component? Which might be foreign hospitals are not covered by Medicare. Somebody would have to figure out, is that true? You present some kind of leaflet that says they're not. They cited a case in the 28J letter that says they are. Sitting here right now, I have no idea. But that's a Medicare question. Another way to look at this case, which frankly, when I read your complaint, what I thought I was going to hear you say is everyone in this case agrees that the Medicare benefit that we're entitled to is a $25,000 cap under the supplemental benefits. And what we're saying is the problem is they didn't tell us that. They told us something else. They lied to us. They misrepresented. They made a mistake. And we relied on that and spent $2 million in care. And what we're trying to recover for has nothing to do with Medicare. We understand it's not covered. But what we're trying to recover is the misrepresentation. But I asked you that question. You said no. It's about whether we're foreign and whether foreign is covered. So that's what I'm trying to understand. Does this arise under Medicare? Because I say, Your Honor, and based on the Karras case, that there isn't a connectedness issue to Medicare. Because basically what this is is a dispute between two private parties, which I think goes to your assumption. And is the connectedness because you're a foreign entity? Yes. Or a lack of connectedness in your view? Right, because the case law says that you have to, like the provider in Karras, there has to be a dispute that involves the enrollee. This dispute doesn't involve the enrollee. This dispute involves the provider of the service in a foreign country for which there is no Medicare benefit. And it involves certain representations that were made, you know, back and forth into the United States in those discussions. So let me try to see if I can get it this way. Is it your position as you stand here today that Medicare does or does not cover the expenses at issue? It's my position that the insurer made some misrepresentations. I'm not asking about it. I'm just asking. There's this thing called Medicare. You're familiar with it. Yes, I am. You've got claims. Your client incurred expenses, right? Yes. All right. Are any of those expenses above $25,000 covered by Medicare? In terms of the pure medical treatment issues, possibly, yes, yes. I mean, you know. So why haven't you pursued a claim? Because, as the Fifth Circuit pointed out, we don't have to exhaust the administrative remedy because we don't have one to exhaust. Our remedy is only with Martin's point, not the enrollee. So let me try it this way. Suppose you'd never called Martin's point. Suppose, I'm sorry? You'd never called Martin's point. Yes. You just went ahead and assumed there was Medicare coverage and you did it. Could you have made a Medicare claim? Well, we wouldn't have made a Medicare claim there. The hospitals probably would have discharged the person because the foreign hospitals well understand that Medicare doesn't pay for any services. Yes, but suppose you put the services in, just like you did here. Would you have had any Medicare claim? We would not have had a Medicare claim because Medicare doesn't cover any treatment out of the USA. Okay. It says the provider has to provide it in the state. So it sounds to me like your answer to my question is, no, Medicare did not cover this. That's what it sounds like you're now saying. I'm saying that, like the insurer in the Fifth Circuit cases, the issue does not involve the enrollee or the actual treatment to the enrollee. That may come out in terms of if the case is remanded and then there's, you know, discovery and there's disputes about damages. When you say that, what do you mean? You mean it doesn't involve the enrollee because you're suing for a misrepresentation and that's all you're suing for? What do you mean by that? Yes, Your Honor, because it's the actions of the insurer, not the enrollee. The enrollee didn't do anything wrong here. The enrollee didn't make any mistakes. And is the enrollee, like the enrollee could assign its rights to you and then you could say, we gave the care, so we want the rights of the enrollee, and the enrollee's rights are to get money from Medicare. Are you saying that? No, Your Honor. Well, what I'm saying is that you're saying that could have. That was your verb that you just used.  And yes, theoretically, that could have happened, but there was never any assignment of rights here by the patient to the foreign hospitals. If it turns out there's Medicare coverage, then don't you lose your claim against Martin's point? Because what they told you would have been true. No, Your Honor. Because what Martin's point told us was, we said to them, we have a sick patient. We need to do these procedures. We need pre-authorization in order to do this. And Martin's point said, you're set. You're pre-authorized. Those are the allegations of the complaint. Those are the ones you have to accept as true. And suppose there is coverage. Suppose they were right that there is Medicare coverage. Pardon? Suppose there is Medicare coverage. They were right. No, they were wrong, because they didn't say anything about Medicare or anything. They didn't say anything about a cap. They didn't say what was covered, what was uncovered, other than to say to the hospitals, you've proposed certain treatment, and we're giving you the green light to go ahead with that treatment. That's it. If they said, we're giving you the green light to go ahead with that treatment. Oh, but by the way, don't spend more than $25,000. I think there would have been a different outcome here. But that's in the hypothetical world. That's not what happened. In the real world, what happened, and the allegations in the complaint that have to be accepted as true at this stage. But wouldn't it be different if they represented to you, they didn't misrepresent that it's covered. They're just not paying now. Wouldn't that be, somebody just decided, we're not going to pay it. That was a truthful statement that you're green lighted and somebody just decided to change their mind or whatever. Wouldn't your claim be either the enrollees claim for breach of contract against Martin's Point or Medicare benefits under Part C? I'm sorry. Go ahead. No, I don't think so. I think we would be back to an equitable remedy. It would be quantum merit. We gave you notice. We undertook these things on behalf of the person that said to us, this entity insures us. And then the insuring entity said to the hospitals, yep, we insure them. And go ahead and these preauthorizations are approved. And then much later, after, of course, there's been a huge amount of detrimental reliance, then they say, oh, sorry. There's a $25,000 cap. So, I mean, whether that applies to Medicare or it was just purely a private insurance issue, I don't think really makes a difference here. What makes the difference here is that there's a tort and that this, because it's not a dispute with the enrollee, that it doesn't have that Medicare association with it. So this is an equitable remedy and a tort claim that's brought under the court's diversity jurisdiction. And what the judge did below was to say, no, this is related to Medicare. And I think that's the disconnect that I am perhaps not presenting well enough as I should today. But your time is up. Thank you. Thank you, counsel. At this time, would counsel for Martin's Point Health Care please introduce himself on the record to begin. Good morning, your honors. May it please the court. My name is Brian Dunphy from Arnold and Porter. I'm joined by my colleague, Alexis Ganaway. And Jeff Spagula, the general counsel of Martin's Point, is here with us today as well. Your honor, Judge Aframe, you have said, isn't this a Medicare issue? It is a Medicare issue. These claims arise under the Medicare Act. And Congress prescribed a process by which providers, like the hospitals, have to go through an administrative process and exhaust that process before bringing a claim, really no matter how that claim is fashioned, in federal, before it can bring a claim in federal court. And so... Well, if he had stood up here a second ago and said, now that, like, the dust has cleared, we all understand. There's a $25,000 cap. That was the most we could have ever gotten under Medicare if the enrollees had given us their claims. We acknowledge that. We agree with that. But what we're saying is, we asked them that. And they didn't tell us. They said, just go ahead. And so we went ahead, we spent $2 million, and now they say, oh, there's a $25,000 cap. That would be, to me, have nothing to do with Medicare, Part C, nothing. It would be, Martin's point, didn't provide, provided a misrepresentation, and the claim would be on the misrepresentation, not having nothing to do with Medicare. So what would be the point of exhausting through five stages? Yes, Your Honor, a few points in response to that question. First, I'd like to sort of center us on what the complaint actually says. And in that complaint, paragraphs 14, 23, 27, there's discussions about contact, about prior authorization. Prior authorization means, is there a medical reason to move forward with this process? It also alleges if the members were covered by insurance, which Martin's point said they were, and they in fact are. They're members of Martin's point's health plan. And then whether they had full medical insurance or applicable benefits. So that's what is alleged here. That is a dispute about benefits, a dispute about payments under Medicare. And in many cases that we cite in our briefs, disputes about payments and benefits under a Medicare plan arise under Medicare. If the idea is you gave them false information and they relied on it and then they lost money because they relied on it, just assume that's true because we're at 12B6, you have to. What would happen at this five-stage Medicare process that would be relevant to this claim that they have made? Well, it's applicable. So, Your Honor, first, this applies. The agency would have to apply Medicare rules. It's obviously a vast statutory and regulatory scheme. This is a Medicare plan governed by Medicare Part C of the Medicare Act. Even though it's a private plan, it administers a Medicare plan. Well, let's focus in. Let's assume that he answered my question and said, we have no dispute right now. The cap, the insurance that was being talked about was $25,000. Nobody said that. And the impression they gave us was something totally different. If that's the case, what precisely is going to happen at the Medicare Appeals Board or the ALJ that is going to help resolve that main state law claim? Well, even if it's because it arises under state law, arises under the Medicare Act, apologies, a state law claim has been held numerous times to make sure that the claim is valid. It should not be able to circumvent the claim. However, there's five steps to the administrative process. The first two of which require engagement with the health plan, engagement with Martin's point, to request an organizational determination, request an administrative decision. So those two steps, the parties could have a discussion, possibly could be resolved. We don't know because they didn't follow that process. I didn't read your brief as suggesting that there was Medicare coverage here. Your Honor, so there is Medicare coverage. They paid the $25,000. Well, I mean above the $25,000. Under Medicare, that wasn't fully covered. Isn't it clear there's no coverage over the $25,000? There is a limit of $25,000. Which is a supplemental benefit under the Part C plan, right? Correct, that's right. So I'm going to read you a sentence from a Ninth Circuit case. You tell me why it doesn't apply here. Those claims, we said, are collateral to any claims for benefits. It is the misrepresentations themselves which the party seeks to remedy. In other words, their claims could be proved without any regard to any provision of the Medicare Act relating to provision of benefits. And if what they're saying is the benefits that we know are $25,000, what we're saying is they told us something different. What do they have to prove about Medicare to win their case? Well, Your Honor, that's the Dosung case I believe they're referring to there. That claim was an unfair competition claim. In that case, the court found several of the claims arose under the Medicare Act. So I'm going to answer a different question. Let's answer this question. What would they have to prove about Medicare in this situation? Well, Your Honor, they would have to, what they've alleged is that they've sought information about whether the members were covered by benefits. That's the allegation in the case. The members were covered by benefits. They'd have to establish a misrepresentation based on that Ninth Circuit case. They'd have to establish a misrepresentation that isn't connected to the benefits. If it's connected to the benefits, then it would arise under the Medicare Act. So you have my lawyer example I gave the other side. Are you saying that before they could sue their lawyer, they'd have to go through some Medicare exhaustion? Before they, I think if they, well, if they sue their lawyer, it would be a claim that would be different than a claim that arises under the Medicare Act. That's a relationship that is separate from Medicare. The claim is, we asked the lawyer a question. He gave us an incorrect answer that violated his duty. That would be, to respond to your hypothetical, that would be a malpractice-based claim. Okay. Their claim is the same. They got the same claim against you. We asked you a question. You gave us an answer. It was wrong. You had a duty. The duty is not to mislead us. Well, Your Honor, the questions that they asked... So, no, for a few reasons. One is that there actually are some allegations in this case that are similar to your hypothetical. That Passage Health, who is a non-party to the case, who is a Florida-based billing company, is alleged to have had these communications with Martins Point. So I suppose they could have a claim against Passage Health that's sort of squarely on... But how is the claim against your client any different? It's different because it has... Again, because it's a discussion and a representation about benefits, it's a dispute about payments... So is the lawyer. The lawyer's advice was Medicare would cover this under Part... I talked to the Medicare people and it's a complicated process, but you will get covered. That's all about Medicare, the lawyer's advice. Well, Your Honor, that's correct. The lawyer's advice is about Medicare, but it's not a... They're not seeking a remedy from a Medicare Advantage plan. They're not seeking a remedy. They're seeking to enforce a promise. Well, again, go back to the allegations in the case. They said they asked about whether they had benefits, and Martins Point allegedly said they do. That is correct. They do have benefits. But that's a defense on the merits. Yeah, that's the 12B6. They haven't stated a claim because the promise was true or something. But that's not about exhaustion. That's something else. So the claim, if it's a discussion among the parties or they haven't made any breach of contract claim, of course, there's a whole body of cases that are discussed having to do with contract parties. So this would be a state law claim that relates to whether there were benefits, whether there was coverage, and the payment amount under Medicare Advantage. And those claims rise under squarely of the Medicare Act. And so going through the process, Your Honor, to finish response to your first question, is they can present these arguments as part of the administrative process if they're not... What could Medicare do with that? So I'm them, and I show up, and I say, Here we are. I agree. Medicare Part C provides a $25,000 cap. There's no dispute about that. What I want to tell you, Medicare person, is that there was a main state law promissory estoppel violation because they misrepresented what the situation was regarding benefits, and I detrimentally relied on that. Can that be awarded by the Medicare ALJ? Your Honor, I'm not aware of any reason why the ALJ could not hear that dispute or render a decision on that basis. If, however, the hospitals go through the process... Again, we're administering a complex regulatory scheme of a Medicare Part C entity, the health plan. If the hospitals are unhappy with the resolution, then they can bring their claims in federal court. They're not precluded from bringing their claims. They just need to exhaust their remedy. Because the misrepresentation, Your Honor, is about the alleged misrepresentation, is about benefits under Medicare and payment under Medicare, there's a large body of case law... Now you're confusing me again because the misrepresentation by the lawyer is about Medicare. Let me try it this way. I've asked you about supposing they call a lawyer, and he gives bad advice, and I think we agree they could bring a tort action against that lawyer, even though the misrepresentation is about Medicare. Suppose they, instead of calling a lawyer, called Medicare and asked, is this going to be covered under Medicare? And Medicare said yes. I could see an argument that they could not sue Medicare in state court. They'd have to go through Medicare's procedures to enforce a promise by Medicare. So that then poses in my mind the question, is your client more like Medicare or more like the lawyer? Thank you. That's a great question. Our client is Medicare. They're a Medicare Advantage health plan that is created to administer Medicare benefit. These are private plans, obviously, but it's a Medicare Part C, administers the Medicare benefit, the payments that the health plans receive from Medicare, they operate under Medicare statutes, they operate under Medicare regulations. So they are an administer of the Medicare program. They are Medicare in that. Will you be saying in this case, we told the truth. And the reason we told the truth is we talked about what was due and what the Medicare situation was. And that's what made our claim true. And so to evaluate that, we'd have to determine, not we, but it would have to be determined what the Medicare situation was. Is that part of the case? That has to be part of the case, Your Honor. It has to be part of the case what is the plan permitted to pay under federal regulations. There's also federal regulations that apply to foreign providers that govern what amounts can be paid to foreign providers. And will that relate to the truthfulness of the representation that's alleged to have been made? It would have to, Your Honor. It's intertwined. The Medicare benefits, the coverage, the amounts, those are all inextricably intertwined as the standard under Supreme Court case law. Those issues of Medicare, rules, regulations, those are inextricably intertwined with the claims here. Therefore, they must exhaust the remedies. So let's assume you are, as you say it, Medicare or affiliated enough with Medicare to make the applicable hypothetical as if they called Medicare. Are you familiar with any case law deciding estoppel claims or promissory estoppel claims or representation claims against Medicare? I imagine there must be some where people would claim they asked if there was coverage and then found out there wasn't. Your Honor, I'm not aware of a case, though we've researched this extensively, that precisely responds to that hypothetical. There are, however, many cases cited in our brief, Global Rescue Jets, Tenet, others, where there have been different flavors of claims that have to do with the issue of the benefits available under Medicare. Rescue Jet, as I understood what the Ninth Circuit said, what bound that up with Medicare was to determine whether the advertising was false required an understanding of what Medicare provided and you couldn't decide whether the representation made in the advertisement was true or false unless you made some kind of threshold determination about what the Medicare situation was. And what I came into this argument trying to figure out is are we in the Rescue Jet situation because there is some threshold dispute about what the Medicare situation is or do we all agree that the Medicare situation is just it's a $25,000 cap and the only thing in dispute is did your client tell them something different? Your Honor, so with respect to the representation case, that was the Ninth Circuit case, as you mentioned, that was, the court found that was not intertwined with the claim for benefits. That was a piece of marketing material about when the date of coverage might have started. So it didn't need to deal with the regulatory scheme at all in addressing that claim. Right, and in Rescue Jets they did and I followed that and now I'm asking you, is this Rescue Jets and if so, explain to me why. Yeah, so this is not like the unfair competition claim misrepresentation in marketing materials type of claim which could be resolved separate and apart, the court found, from the Medicare regulations, Medicare guidance. This is a claim where the representations have to do with the benefits and whether there is coverage, whether they were members of this health plan and so that is inextricably intertwined with the vast statutory and regulatory scheme at play here and I'll also offer, it's important to consider why we're in that world, why we're in the Medicare world. Because of the agency's interest in administering federal health care programs, that is one reason of course why claims must be channeled through the agency to utilize the agency's expertise and to therefore try to resolve issues before they are presented to the district court and to utilize the interest that the agency has in administering its program. I see I'm out of time but I'd be happy to answer any other questions that you may have. Thank you. Okay, thank you. Thank you, counsel. At this time would counsel for the appellants please reintroduce themselves on the record to begin. You have two minutes. Thank you, Mark Darling for the Mexican Hospitals. I think the thing that we've been grappling with here is whether or not this transaction alleged in this complaint is inextricably intertwined with Medicare and it's not and just like the situation with Caris, it was not. It was a dispute between a private insurer and a provider and that's exactly what we have here. I think they're saying it's a dispute between a Medicare plan and a provider. Well, what I'm saying is even in Caris, the insurer had been reimbursed under a Medicare plan so there was no dispute on behalf of the enrollee. So when you take the enrollee out of the equation which the enrollee is out of the equation here what you're left with is that tort claim. What you're left with is that promissory estoppel claim and that's solely between the insurer and the provider, the foreign provider who understands that Medicare doesn't cover foreign providers. That's why they call. That's why they say, oh, you have health insurance. Okay, great. Here's what we're proposing to do. Is that okay? Pre-authorization approved. There are several we've put in the record that weren't part of the original complaint but they're in as part of the 59E motion. Are you saying you're not subrogated to the enrollee's claims? There was never any assignment of benefits here. That was just negligent by your client. Isn't the medical provider routinely get subrogated to or an assignment of the enrollee's claims? Whether they do or whether they don't I don't think is the issue. The issue is that the enrollee is not involved. So that takes out the inextricably intertwined issue that Martin's point wants to press. So I think that's the reason. Thank you. Thank you.